UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WAGGEH OUSMAN,<br><br>                Petitioner,<br>v.<br><br>JOHN KELLY, et al.,<br><br>                Respondents. | CASE NO. C17-1014JLR-MAT<br><br>ORDER |

## I. INTRODUCTION

This is a 28 U.S.C. § 2241 immigration habeas action. (*See generally* Pet. (Dkt. # 1).) Before the court is Respondents' ("the Government") emergency motion for reconsideration of the court's July 6, 2017, temporary restraining order ("TRO") prohibiting Petitioner Waggeh Ousman's transfer or removal. (MFR (Dkt. # 5); *see* 7/6/17 Order (Dkt. # 3).) Mr. Ousman opposes the motion for reconsideration. (MFR Resp. (Dkt. # 8).) Having considered the motion, Mr. Ousman's response, the balance of

//

ORDER - 1

the record, and the governing law, the court GRANTS the motion for reconsideration and VACATES the TRO.

## II. BACKGROUND

### A. Factual Background

Mr. Ousman is a native and citizen of The Gambia. (Pet. ¶¶ 1, 3; Booth Decl. (Dkt. # 6) ¶ 3.) He entered the United States on November 4, 1995 as a B-1 nonimmigrant visitor with a 30-day period of authorized stay. (Pet. ¶ 2; Booth Decl. ¶ 3.) He failed to depart and was eventually placed in removal proceedings. (Pet. ¶ 2; Booth Decl. ¶ 3.) On February 3, 2010, an immigration judge ordered Mr. Ousman removed to The Gambia. (Pet. ¶ 2; Booth Decl. ¶ 4.) The Board of Immigration Appeals dismissed his appeal, and the Ninth Circuit dismissed his petition for review for failure to prosecute. (Pet. ¶ 2; Booth Decl. ¶ 4.)

At the time Mr. Ousman's order of removal became final, he was detained at the Northwest Detention Center in Tacoma, Washington. (Booth Decl. ¶ 5.) Mr. Ousman participated with United States Immigration and Customs Enforcement ("ICE") in efforts to obtain a travel document from The Gambia, but those efforts were unsuccessful. (Pet. ¶ 3; Booth Decl. ¶ 5.) A deportation officer ultimately determined that a travel document was unlikely to be issued in the foreseeable future, and Mr. Ousman was released on an Order of Supervision.[1] (Pet. ¶ 3; Booth Decl. ¶¶ 6-7.) Since Mr. Ousman's release, he

//

---

[1] Mr. Ousman asserts that he was released in October 2010 (Pet. ¶ 3), but the Government submitted evidence that he was released in March 2011 (Booth Decl. ¶ 7). This factual dispute is not material to the instant order.

ORDER - 2

has routinely appeared as directed by ICE and cooperated with all ICE requests. (Pet. ¶ 4.)

On June 7, 2017, Seattle-based ICE Deportation Officer Brett Booth received an email from the Chief of Staff of the Removal Division of the Office of Enforcement and Removal Operations. (Booth Decl. ¶ 8, Ex. A (Dkt. # 6-1).) The email explained that from July 18-20, 2017, the Gambian government will conduct interviews of individuals in York, Pennsylvania, to establish eligibility for travel documents for the purpose of removing Gambians from the United States. (*Id.* at 2.) The email instructed that ICE should take certain removable Gambians who were not detained, including Mr. Ousman, into custody for the purpose of being transported to York, Pennsylvania, interviewed, and then returned to their respective places of origin. (*Id.*; Booth Decl. ¶ 8, Ex. B (Dkt. # 6-2).) Officer Booth has been informed that the Gambian government is requiring in-person interviews, not telephonic or video interviews. (Booth Decl. ¶ 12.)

On June 8, 2017, Mr. Ousman appeared and reported to ICE as required. (Pet. ¶ 6.) He was informed that ICE was making arrangements to obtain a travel document for his return to The Gambia, and he was taken into custody and transferred to the Northwest Detention Center. (*Id.*; Booth Decl. ¶ 11.) Mr. Ousman is currently detained at the Northwest Detention Center. (Pet. ¶ 1.)

**B.     Procedural History**

On July 5, 2017, Mr. Ousman filed a habeas petition seeking, among other relief, an order releasing him from detention and reinstating his Order of Supervision and an emergency order barring his transfer out of this judicial district. (*See generally* Pet.) On

ORDER - 3

July 6, 2017, Mr. Ousman filed an emergency motion for a TRO and preliminary injunction, requesting that the Government be enjoined and restrained from transferring him from the Northwest Detention Center to any other facility during the pendency of these proceedings. (TRO Mot. (Dkt. # 2).) In his motion, Mr. Ousman explained that on July 5, 2017, an ICE officer informed him that he would be transferred to a detention facility in Pennsylvania and that the transfer was imminent, which Mr. Ousman understood to mean within the next day or two. (*Id.* at 2.) Mr. Ousman objected to (1) being transferred out of the Northwest Detention Center, away from his counsel; and (2) to ICE's alleged intent to hold him in indefinite custody, rather than release him on his prior Order of Supervision. (*Id.*)

On July 6, 2017, the Honorable Ricardo S. Martinez entered an order on behalf of the undersigned judge temporarily staying Mr. Ousman's transfer pending briefing and ruling on his TRO motion and his habeas petition. (7/6/17 Order at 2.) The court directed the Government to file a return and status report and to respond to Mr. Ousman's request for a stay by July 13, 2017. (*Id.*) The court ordered the Government to note the submissions for consideration on the third Friday after filing. (*Id.*)

On July 11, 2017, the Government filed an emergency motion for reconsideration, asking the court to vacate the TRO no later than Friday, July 14, 2017, so that ICE could temporarily transfer Mr. Ousman to Pennsylvania to participate in an in-person interview with the Gambian government. (*See* MFR.) The Government did not have an opportunity to respond to Mr. Ousman's TRO motion, and therefore the evidence summarized above regarding the purpose and duration of the transfer is new information

ORDER - 4

to the court. The Government argues that the TRO should be vacated because the court does not have jurisdiction to interfere with efforts to obtain travel documents or remove Mr. Ousman and because Mr. Ousman has not shown a likelihood of success on the merits. (*Id.*)

The court ordered Mr. Ousman to respond to the Government's motion by July 13, 2017. (7/12/17 Order (Dkt. # 7).) Mr. Ousman spends the majority of his response arguing that his continued, indefinite detention is unconstitutional under *Zadvydas v. Davis*, 533 U.S. 678 (2001). (MFR Resp. at 2-7, 11.) That argument is relevant to Mr. Ousman's habeas petition generally, but it is irrelevant to the issue currently before the court: whether to reconsider the court's order staying Mr. Ousman's imminent, temporary transfer to Pennsylvania. (*See generally* MFR; *see also* 7/6/17 Order at 2-3.) He also argues on various grounds that his temporary transfer to Pennsylvania is unnecessary.[2] (MFR Resp. at 8-10.)

### III. ANALYSIS

Motions for reconsideration are disfavored. Local Rules W.D. Wash. LCR 7(h)(1). The court ordinarily will deny such motions unless the moving party demonstrates (1) manifest error in the prior ruling, or (2) new facts or legal authority that could not have been brought to the attention of the court earlier with due diligence. *Id.* As noted above, the Government has presented new facts that could not have been

---

[2] The court disregards the unsworn averments of Mr. Ousman's counsel that purport to undermine the Government's sworn declaration (MFR Resp. at 10; *see also* Emergency Travel Doc. App. (Dkt. # 8-1)), but even if true, counsel's statements would not alter the court's analysis.

brought to the court's attention earlier because the TRO was issued without providing the Government an opportunity to respond. (*See* 7/6/17 Order at 2.) This new evidence persuades the court that Mr. Ousman is not entitled to a TRO.

To obtain a temporary restraining order, a party must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (holding that the same substantive standard applies to TROs and preliminary injunctions). Ninth Circuit law also allows for satisfaction of the first and third elements outlined in *Winter* by raising serious questions going to the merits of the moving party's case and showing that the balance of hardships tips sharply in the moving party's favor. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131, 1135 (9th Cir. 2011) (adding that plaintiff must also show a likelihood of irreparable injury and that the injunction is in the public interest).

Now that the record before the court is more fully developed, it is clear that Mr. Ousman is not entitled to a TRO preventing his transfer. The court need not consider the merits of Mr. Ousman's case at this time because the other elements do not weigh in his favor. Mr. Ousman based his motion for a TRO on his understanding that his transfer to Pennsylvania and away from his counsel would be permanent. (TRO Mot. at 3; Pet. ¶¶ 9-10.) But the Government has submitted unrebutted evidence that it intends to temporarily transfer him to Pennsylvania for an in-person interview by the Gambian

government, then transfer him back to the Northwest Detention Center. (*See* Booth Decl. ¶¶ 8-13, Exs. A-B.) As the Government points out, Mr. Ousman has an obligation to cooperate with its efforts to obtain a travel document. *See* 8 U.S.C. § 1253(a) (penalizing non-citizens who have been ordered removed and fail "to make timely application in good faith for travel or other documents necessary" for departure from the United States). Mr. Ousman has not shown a likelihood of irreparable harm if he is temporarily transferred to Pennsylvania. (*See* TRO Mot. at 3; MFR Resp. at 11.) Furthermore, given the temporary nature of the transfer, the equities do not tip in his favor and preliminary injunctive relief would be contrary to the public interest, which favors obtaining travel documents for non-citizens who have been ordered removed. The court therefore concludes that Mr. Ousman is not entitled to a TRO prohibiting his transfer or removal.

## IV. CONCLUSION

Based on the foregoing analysis, the court GRANTS the Government's motion for reconsideration (Dkt. # 5), DENIES Mr. Ousman's emergency motion for a TRO and preliminary injunction (Dkt. # 2), and VACATES the temporary stay of location transfer and removal (Dkt. # 3). The court ORDERS the Government, within 30 days of the date this order is signed, to file a return as provided in 28 U.S.C. § 2243 and a memorandum of authority in support of its position. The Government shall note the return for consideration on the third Friday after it is filed, and the parties shall submit additional briefs in accordance with the Local Civil Rules. The court DIRECTS the Clerk to send

//

//

copies of this order to the parties and to the Honorable Mary Alice Theiler.

Dated this 13th day of July, 2017.

JAMES L. ROBART
United States District Judge